And we'll move to our fifth case of the day, Davis v. City of Elgin. I miss Hennessey, whatever you're writing. Thank you, Judge. Kathleen Hennessey on behalf of Plaintiff Appellant Mace Davis. This appeal concerns the District Court's oral ruling on cross motions for summary judgment in which the District Court denied Davis' motion and granted summary judgment to defendants on the grounds of qualified immunity. This was an error. On July 29, 2016, two Elgin police officers shot 57-year-old Mace Davis four times with high-powered impact weapons, causing him serious injury, including shattering his right arm bone, which required the surgical implantation of a titanium plate to repair. When defendants shot Davis, he posed no threat, was unarmed, and was passively resisting and in the midst of surrendering. So I want to stop you there. You said he posed no threat, right? We could say that perhaps in hindsight, but in terms of what the officers knew when they were standing outside that home, they knew that he had threatened his ex-wife with a shotgun, right? That's correct? We dispute that, Judge, because they also learned prior to him coming out on the porch that the wife had said it was a joke, right? And that she did not see a firearm. She saw what she thought was a firearm wrapped in a blanket. Okay. And what about the knives? Your client had made comments about knives, which, unlike a shotgun, can be placed on the person, correct? And he had threatened suicide, correct? Correct. Okay. So these were all the facts in the officer's mind at that time, right? And so isn't this case – let's zoom in on qualified immunity. Isn't this case very different than Phillips, the main case that you rely on, where the person was not threatening? I think she was quite inebriated, unresponsive. Your client – there are different facts here. Yes, Judge. So the facts that the officers knew at the original 911 call happened seven hours before they encountered Davis and shot him. And so when Davis is on the porch, it is undisputed defendants have admitted that prior to the first shot, they were not in fear for their own lives or the lives of anyone else on scene, and the other shooting officer admitted – What about him? But he wasn't going back in that house. No. He wasn't going back in that house. He was not. No, I'm saying those officers were not letting him back in that house. They had no idea whether there was a shotgun in there. They had no idea whether he committed suicide. They had no idea whether there were knives in there. They told him that. He was uncooperative. What should they have done? He was standing on the porch communicating with negotiators. He had made no indication that he was – the video established – Are we talking about the first round of shots or the second round? For the first round of shots, he is standing on the front porch talking – Isn't he standing in between a screen door and the house? There is a screen door that's partially open and in front of him is a chair. Yeah. Does he come onto the porch? Isn't he standing within the doorway, it looks like? Yeah. From the video, I don't know. Correct. He's in the threshold, if not on the porch, he's in the threshold of the doorway. He's standing talking with negotiators. I think that's important factually as to Walnut's question of compliance as to where he was. I think there's a distinction between he was standing on the porch, he was standing within the doorway, hiding behind a screen and a chair. So we kind of have to own factually where was he. He was – I believe he's in the threshold of the doorway. Okay. If not – he's in the threshold of the doorway, yes. Okay. But he's communicating with negotiators. His hands are empty in front of him. He does not make any kind of physical movement or verbal suggestion to indicate that he is going – Yes, he did. Didn't they ask him, are you coming out? And he said, no. And they said, we just want to check on you. And he says, my doctor said I'm doing fine. So he did communicate. He did not communicate an intent to return back into the home. He communicated an intent to not come off of the porch. And so there's no indication that he's going back into the home prior to the first shot. With respect to the second shot, defendants have admitted – But there's only one round of shots first, right? There's a shot and he goes back into the house. He stumbles back into the home after the first shot. What's the timing between the first shots and the second round of shots? It's approximately 10 minutes. So then the negotiators – or does he – he calls the negotiators and says, I'm coming back out? There is phone communication between Mr. Davis and the negotiators. He indicates that he's coming back out to surrender. The officers know that he has been hit by the first shot, that he is injured by the first shot. He comes out onto the porch. The video shows he lifts his shirt and spins around to demonstrate for the officers. But the problem you have is you don't argue in your brief the separate bullets constituted separate discreet acts. You argue it as one. You argue it as one event rather than the first bullet was excessive force, the second bullet, the third bullet, the fourth bullet. Maybe you have a claim on the fourth bullet, but that's not how you argue it. Well, I think based on the Phillips case, that court, you know, it did concede that the first shot was a close call, but it also found that the sheer volume of shots constituted excessive force. And I think this court can do the same thing. I think the sheer volume of the shots, knowing that he's injured, knowing that he's unarmed. I don't know if you're following Judge Kirsch's question. There's two different ways to establish the argument of excessive force, and we're trying to determine which one, which path are you pursuing, or both? I guess I would argue both. Well, but your brief doesn't. That's your problem. Your brief argues the first path, and that's the only path it argues. You don't argue that the fourth bullet by itself was excessive force. That's the problem. And you can't argue it now. But if I disagreed with that reading of the brief and I found that there were two paths argued, how would you present that in regards to the fourth shot? I mean, by the fourth shot, the video does establish that he's in the midst, he's already made his verbal statement. They know that he can't make good on this verbal statement, and he's in the process of bending down to the ground. They've shot him three times now. They know he's injured from the first shot, and he's literally in the process of bending down to lay down on the ground, and they shoot him the final and fourth time. Knowing that he is not any threat to them, and that he is complying with their commands. They've admitted at summary judgment that he's complying with their commands, and he's surrendering. And that is excessive at that point. So the argument is that by the time of the fourth shot, the officers have conceded that Mr. Davis was surrendering? By the time of the second shot, defendants have admitted at summary judgment that Mr. Davis was surrendering. Okay. But even if he was surrendering, what do we do with the mouthy comment, which may not have been credible, however, it suggests some sort of lack of judgment, unpredictability, what's this guy going to do, let's just immobilize him so he doesn't have a chance to hurt himself or others, right? Because he makes that statement, and then he is shot the second and third, in rapid succession, second, third, fourth shots. Well, I would argue that it's a verbal-only statement. He makes no physical, threatening physical movement. Defendants have admitted he makes no threatening physical movement. And what do you do about the tone of voice? Because I listened, I like to watch and listen. It's quite aggressive. Even apart from whether it was credible or not, it suggests some lack of judgment and balance, and he's quite angry. And that's all that it suggests. No reasonable officer would find that threat or that comment to be credible. He's injured, they know he's injured. They are separated from him. By 20 to 30 feet, there's an armored vehicle between him and themselves. Both of the shooting officers have what they call lethal coverage, which is another officer behind them with a real firearm. I see I've entered my rebuttal time, but I'll finish my thought. And there are snipers on scene. And so it's not, it was completely unreasonable for anyone to think that that statement that he made when he was coming down off the porch was a credible threat, and the defendants have admitted that he was surrendering at that moment. All right. Thanks, Ms. Hennessey. Okay, Mr. Deano. Thank you. Good morning. James Deano for the defendant of Appalese. May it please the court. The suggestion that, first of all, Mr. Davis, the plaintiff, was surrendering, I don't think there was an admission that he was surrendering. He may have been in the process of trying to comply with police orders, but right in the middle of that process, we're talking about the second time he's out on the porch, he starts yelling, where's that person that shot me the first time? I'm going to bust his face in. And so is there any admission, because I didn't see that, from the, that there was an admission that he was surrendering? I don't recall making that admission, Your Honor. I don't recall seeing it. I think that the anticipation was that he came out for the purpose of surrendering. He lifted up his shirt to show that he didn't have any weapons. But right after he did that, he started yelling aggressively, and again, the point was they did not want him to go back into the house. He's showing at that point that he's angry, he's irritable, he's unpredictable, and in their minds, he had a weapon in the house, because the 911 call was credible. It came from the sister of the victim. He's got a gun on me, and by the way, Mr. Davis admits in his statement the next day that he did have a weapon, a firearm. He says it was a pellet gun. I want to make sure that I get this, too, before we move on, because this is important as far as our analysis and how the Supreme Court has told us to deal or handle with this. Judge Kirsch made a great point, and I'd love to hear your view on how this was argued. Because I had broken it down into the first set of shots and the second. Or was it shot 1, 2, 3, and 4, and assessing whether or not each shot was excessive? I think that the first, if I can take them on both separate occasions. When he came out the first time... How was it argued? That's what we're trying to figure out. I think it was argued that all of them were not excessive. That the first time, the first shots were not excessive because Mr. Davis was turning to go back into the house where the police believed he had the firearm. They did not want him going back in and possibly picking them off from a window. And the second set of shots was Mr. Davis came out, it looked like he was surrendering, so they didn't shoot. There's this argument that they were told, shoot no matter what. But you can clearly see from the videos, that was not the order because that was not what was carried out. He came out the second time... He spins around. Right, no shots. And then, okay, there were three shots at that point. And I think it's impossible to break down each shot. I mean, you... No, no. It's not impossible. It is possible. Okay, wait a minute. It is possible, but it's a strategic decision that the plaintiff makes. Because if the plaintiff stands in front of a jury and says, the first three shots were not excessive, but the fourth was, the likelihood that a jury is going to return the verdict in favor of the plaintiff, foo! Right? The plaintiff wants to argue that all four shots were excessive. That's a strategic decision that the plaintiff makes in the district court. Once they make that decision that that's how they're presenting the case, they are stuck with it. They can't come up in front of the United States Court of Appeals and say, I changed my mind. I concede that the first three shots were reasonable, but the fourth was not. You don't get a second bite at the apple. That's the problem, I think. I agree. Do you agree that's how it was argued below, or do you believe Judge Kirsch's recitation is, I'm trying to distinguish who's arguing here. I believe both. That the way that it was presented was that the second episode, Second set. Yes. Okay. Was, that the event was excessive. Okay. Not broken down by each shot. I don't recall anywhere in the briefs that they were talking about the fourth shot as independent from the second. We deal with this a lot in punching cases, right? Where a police officer punches a suspect to subdue him. And then 30 seconds later, hits him again. Just hits him again. And the plaintiff argues that, look, I'm not conceding. The first shot, he was a fight. He got in a fight with a police officer. But now he's laying in the ground in handcuffs. The second punch was clearly excessive because at that point he was subdued. Or they can argue the whole event was excessive.  In that context, I would suggest that the second episode, as long as he wasn't surrendering, those cases where they talk about the final punch is when the person was in cuffs. Right. Yeah. You're making a qualified immunity argument or excessive. Right. Right. No, I understand. I understand what you're doing, but that's different with the question that Judge Pryor asked.  How it was presented in the district court. No one has answered it yet, so I'm going to ask it again. How was it argued below? I believe it was argued below as the entire event. Okay. That it wasn't taken apart piecemeal and talking about each shot and whether there was a reason to fire that particular shot. And the second set of shots, the second episode, our argument is that until he had clearly surrendered. Surrendering is a clear and unequivocal act. But right in the middle of it, he starts yelling that he's going to pound the face in of somebody. That's before. That's not accurate. The second, third, and fourth shot don't occur until he starts yelling. Right. And so at that point, there's a two and three. There's a pause between two and three. And then there is a fourth shot. That's what the video shows. Right. And at that point, Mr. Davis has not clearly and unequivocally surrendered. And that's why I think that fourth shot is not excessive. It's to prevent him from getting up and getting back into the house where the police officers believed that there was a weapon, a firearm. Counsel for the other side said he was kneeling. He was going toward the ground before the fourth shot. OK. But there was nothing to stop him from getting up and going back into the house. He was not yet in custody. So you just keep shooting until the suspect is in custody? Well, it was a final shot. I mean, it wasn't like, OK, let's wait a few minutes and then shoot him again. It came on the heels of the other two shots. I don't think that there was a clear point where it was obvious to everybody that Mr. Davis, even to himself, had surrendered. Not obvious. Reasonable. OK. That it was reasonable to believe on the part of the officers that Mr. Davis was done now with his aggressive and irrational, threatening conduct. So that fourth shot, I think it's part of the registry. I mean, it's just one event. And until he's in custody, they're not taking any chances. Are you wanting us to answer whether or not the fourth shot was reasonable? Or are you wanting us to answer whether or not the second set of shots was reasonable? Both, I suppose. The second set of shots, I think, was reasonable because Mr. Davis, they weren't made until after he made the threat, the verbal threat. OK. Take it the other way. The fourth shot was reasonable because he had not yet been taken into custody. He showed earlier that he was willing to surrender. He was lifting up his shirt, showing that he didn't have a weapon. But right in the middle of it, he starts yelling that he's going to pound the face in or bash the face in of the police officer. That struck him. And this notion that the officers, the snipers who did the shooting, had to have a direct threat made upon them, that's not how it works in a barricade situation. This wasn't a one-on-one where a police officer cannot use force until the subject approaches him and threatens him. This was, as we all know, the SWAT team was there and they were passing orders down along the division of assignments. So all the snipers here is, shoot if he turns to go back into the house. All right. Thank you, Mr. Danno. Ms. Hennings, we'll give you a minute for rebuttal. Thank you, Judge. I'd first like to address Judge Kirsch's question about whether our brief addresses the shots differently. In our brief, we specifically address the constitutionality of the first shot in comparison to the second volley of shots, the second, third, and fourth shot. And that is on pages 12, 13, and 25 when we address the constitutionality of those two separate shooting events separately. You said page 12 of your brief? 12, 13, and 25. But it is plaintiff's position that every single shot that night was excessive based on the defendant's own admissions. And I'd just like to read to you the admissions that defendants made at summary judgment, and they can be found at ECF 104. Defendants have admitted that when the first shooting officer shot Davis the first time, he, quote, was not in fear for his own life or the lives of any other individuals on scene, close quote, paragraph 34. When the first shooting officer shot Davis the first time, he did not see Davis with any weapons. That's at paragraph 33. The second shooting officer admits that he, quote, was not aware of any threat to an officer, close quote, prior to the first shot. That's paragraph 66. Neither of the shooting officers ever saw Davis with any sort of weapon before or after they shot him. That's paragraph 51. Davis did not run, and he did not advance on or attempt to attack any officers. That's paragraph 47. One of the shooting officers admits that when Davis came out the second time, he was surrendering, attempting to surrender in his mind, probably. That's paragraph 63. Based on these admissions and the video evidence, this court can enter judgment in favor of Davis. We respectfully request that you reverse the district court's ruling granting summary judgment in defense of Davis. Thank you, Ms. Hennessey. Thank you to both counsel.